UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GRAND MEDFORD ESTATES, LLC and SCHEYER
COURT, LLC,

                *Plaintiffs*,

    -against-

THE TOWN OF BROOKHAVEN, THE TOWN BOARD
OF THE TOWN OF BROOKHAVEN and THE
PLANNING BOARD OF THE TOWN OF
BROOKHAVEN

           *Defendants*.

22-CV-7834 (ARR) (ARL)

**OPINION & ORDER**

ROSS, United States District Judge:

Defendants the Town of Brookhaven, the Town Board of the Town of Brookhaven, and the Planning Board of the Town of Brookhaven move to dismiss the Amended Complaint of plaintiffs Grand Medford Estates, LLC and Scheyer Court, LLC in its entirety. For the reasons set forth below, I grant defendants' motion.

## BACKGROUND[1]

This case concerns a dispute between two developers and a township over the latter's actions disrupting the developers' subdivision developments. Chief among these actions is the town's alleged refusal to release bonds whose conditions the developers assert they have satisfied.

### Grand Medford

Developer Grand Medford, or its predecessor in interest, has been working with the Town of Brookhaven since at least 1998 to develop the Grand Medford Gardens subdivision (also

---

[1] "In recounting the background to this case, [I] follow the standard applicable to judicial review of motions to dismiss, *i.e.*, [I] accept all factual allegations in the plaintiffs' amended complaint as true, and [I] consider that pleading . . . in the light most favorable to plaintiffs." *Melendez v. City of New York*, 16 F.4th 992, 996 (2d Cir. 2021).

referred to as the "Medford Estates subdivision"). Am. Compl. ¶ 12–13, ECF No. 10. Throughout this time, Grand Medford has filed several actions in New York State court, including under C.P.L.R. Article 78, a state law vehicle for challenging agency action. *Id.* ¶¶ 15, 27; *see* N.Y. C.P.L.R. § 7803. These actions have attempted to, for example, ensure that defendants act consistent with the "concept of due process" and make approvals necessary for subdivision development. Am. Compl. ¶¶ 15, 18, 27. In 2010, the Planning Board issued "conditional final approval" for the Medford Gardens subdivision, which required Grand Medford to post a $541,000 performance bond or, in lieu of a performance bond, cash. *Id.* ¶¶ 19, 22, 24. Under the performance bond, Grand Medford had to complete certain work to warrant its release, including tree planting, fencing, and other construction. *Id.* ¶¶ 24, 25a–b, 26a. In addition to the performance bond, "as a prerequisite to constructing the Medford Gardens subdivision," Brookhaven required that Grand Medford "post a $680,000.00 highway bond to guarantee completion of off-site improvements to . . . a public highway." *Id.* ¶ 28. To comply with this requirement, Grand Medford posted a $680,000 cash deposit. *Id.* ¶ 29. In 2018, once Grand Medford completed the highway bond work, Brookhaven converted this highway bond to "cash security in lieu of a performance bond to ensure the completion of . . . public improvements for the [Medford Gardens] subdivision." *Id.* ¶ 30. Defendants are still holding the $680,000 as a performance bond. *Id.* ¶ 34. In addition to cash for the performance bond, in 2019 defendants required Grand Medford to post two "separate $500 supplemental bonds" to secure "[c]ertificates of [o]ccupancy for the completed single family homes in the Medford Estates Subdivision." *Id.* ¶ 36. Later, in February 2020, Grand Medford had to deposit $1,800 "as supplemental bonding" for additional lots in the subdivision. *Id.* ¶¶ 38–39 .

Grand Medford alleges that in July 2020, it completed "the improvements required by the performance bond" and, subsequently, "demanded" the bond's release. *Id.* ¶¶ 40–41. Grand

Medford "demanded the release of the [p]erformance [b]ond" again in September 2020 and for a third time in October 2020. *Id.* ¶¶ 42, 76. Defendants have refused Grand Medford's multiple demands for release of the performance bond. *Id.* ¶ 10. Grand Medford alleges that defendants have delayed the release of its performance bond by concocting several false and unlawful requirements that they assert Grand Medford must complete before they release it from the performance bond.

First, Grand Medford alleges that between January and September 2020, defendants "denied final approvals for [five] single family dwellings based upon the erroneous claim that" the lots' driveways were not in compliance with the Stormwater Pollution Prevention Plan ("SWPPP"), even though defendants had previously granted Grand Medford a waiver exempting it from the SWPPP requirements. *Id.* ¶ 44. These requirements stopped Grand Medford from "receiving a return on its investment[s]" and prevented it from "closing on the property transactions." *Id.* ¶ 48. In addition, the SWPPP requirements delayed Grand Medford's release from the performance bond. *Id.* ¶ 46. Ultimately, defendants acknowledged that Grand Medford had a SWPPP waiver and "eliminated the requirement." *Id.* ¶ 49.

Grand Medford alleges that defendants further unlawfully delayed release of the performance bond by requiring it to first complete "hundreds of thousands of dollars" of additional maintenance work—referred to as the punchlist items—which was not originally a condition of the performance bond or the conditional final approval. *Id.* ¶¶ 81–82. These punchlist items, Grand Medford contends, have transformed the developer into a "maintenance contractor for the roads contained in the [subdivision]," even though the bonds are "performance bonds" and not "repair [or maintenance] bonds." *Id.* ¶ 90.

In addition to the delayed release of the performance bond, Grand Medford also contends

that in November 2020, the Town refused to issue the "certificates of occupancy for the last [two] single family dwellings," even though the homes were built and in contract with potential buyers. *Id.* ¶¶ 53, 56. Grand Medford alleges that defendants refused to issue the certificates of occupancy until "Planning Department staff issued final approval for the release of the performance bond." *Id.* ¶ 53. By withholding these two certificates of occupancy, defendants effectively "sei[zed] over $1,000,000 of capital which was tied up in these two homes," and even further delayed release of the performance bond. *Id.* ¶¶ 53–56. Plaintiffs further allege that the "Commissioner of the Planning Department"—not a party to this lawsuit—warned that if Grand Medford threatened to sue over the release of the two certificates of occupancy, their release would be even further delayed. *Id.* ¶ 62. Ultimately, in January 2021, "the Planning Department advised Grand Medford that the [c]ertificates of [o]ccupancy 'are no longer on hold.'" *Id.* ¶ 65. Although defendants authorized release of the hold in early January, the two certificates of occupancy were not actually released until April 2021 due to administrative delay. *Id.* ¶¶ 66–69.

Lastly, Grand Medford alleges that defendants have unlawfully deemed Lot 26—a parcel of land in the Medford Gardens subdivision—as a protected wetland under Brookhaven Town Code section 81-3 (2011). *Id.* ¶ 71. Defendants are currently engaged in eminent domain proceedings related to Lot 26. *Id.* ¶¶ 71–72; *see also* Defs.' Mot. Dismiss Exs. 7–11 ("Defs.' Mot."), ECF Nos. 17-9–17-13 (eminent domain documents and filings).[2] Grand Medford has filed a notice of claim in state court seeking compensation for the Town's acquisition of Lot 26. *Id.* Ex. 11, ECF No. 17-13; *see also* Am. Compl. ¶ 73.

***Scheyer Court***

---

[2] I take judicial notice of all exhibits related to the eminent domain proceedings. *See infra* Discussion Section II.

Similar to Grand Medford, Scheyer Court or its predecessor in interest has been working with defendants since 2011 to develop a subdivision called Quigley Estates. Am. Compl. ¶¶ 97–131. The Planning Board issued conditional final subdivision approval of the Quigley Estates subdivision in October 2014. *Id.* ¶ 107. To ensure the "construction of the improvements outlined in the conditional final approval," the Planning Department determined that Scheyer Court needed to post an $845,000 performance bond. *Id.*¶ 108. Between December 2019 and November 2020, Scheyer Court partially completed the improvements, and as a result, the Planning Department decreased the performance bond Scheyer Court was required to post to $508,348.50. *Id.* ¶ 109–11. After further dispute from Scheyer Court, the Planning Department reduced the performance bond again in January 2021 to $460,428.50. *Id.* ¶¶ 112–13. Scheyer Court originally posted "a cash performance bond" for $460,428.50, but in April 2021 defendants converted it to a surety performance bond and refunded the cash to Scheyer Court. *Id.* ¶ 113. Scheyer Court alleges that it completed all the necessary improvements and, in September 2022, "demanded release of the performance bond." *Id.* ¶ 116–17. After Scheyer Court made a second demand for release of the performance bond, "the Planning Department advised Scheyer Court that it was refusing to recommend release of the [p]erformance bond" until it completed further maintenance and work items listed in a punchlist, most of which, it alleges, were not requirements of the original performance bond. *Id.* ¶¶ 117–121, 127. In February 2023, Scheyer Court was forced to pay a "renewal premium of $13,813.00" for the Quigley Estates performance bond. *Id.* ¶ 166.

***Claims***

Plaintiffs have brought several constitutional claims against defendants based on defendants' refusal to release the performance bonds and their designation of Lot 26 as protected wetlands. In Count I, plaintiffs bring an as-applied due process challenge to Brookhaven Town

Code sections SR-17(C) and (F). *Id.* ¶¶ 132–54. In Count II, plaintiffs also argue that New York

State Town Law preempts those sections of the Brookhaven Town Code. *Id.* ¶¶ 155–62. In Counts

III and VIII, plaintiffs bring procedural and substantive Due Process Clause claims against

defendants under 42 U.S.C. § 1983. *Id.* ¶¶ 163–74 (procedural due process); *id.* ¶¶ 241–54

(substantive due process). In Count IV, Grand Medford alleges that "Chapter 81 of the Town

Code" violates their procedural and substantive due process rights. *Id.* ¶¶ 194, 200.  In Counts V

and VI, plaintiffs bring §1983 Equal Protection Clause claims against the Town, under theories of

selective enforcement and class of one. *Id.* ¶¶ 202–17. In Count VII, Grand Medford brings a §

1983 Takings Clause claim against defendants. *Id.* ¶¶ 218–40. Finally, in Count IX, plaintiffs

allege that defendants' actions constitute unlawful retaliation for plaintiffs' exercise of their First

Amendment rights. *Id.* ¶¶ 255–76.

## LEGAL STANDARD

### I.    Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be

dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When deciding a motion to dismiss under Rule 12(b)(6), I must "accept all factual allegations as

true" and "draw all reasonable inferences in favor of the plaintiff[]." *Melendez*, 16 F.4th at 1010

(quotation omitted). A claim is sufficiently plausible to withstand a motion to dismiss when the

plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Determining whether a claim has facial plausibility is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"On a 12(b)(6) motion to dismiss, [I] must limit [my] 'consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference.'" *L. Prac. Mgmt. Consultants, LLC v. M&A Couns. & Fiduciaries, LLC*, 599 F. Supp. 2d 355, 358 (E.D.N.Y. 2009) (quoting *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)). Even if a document is not attached to the complaint or incorporated by reference, Federal Rule of Evidence 201 permits me to take judicial notice of, *inter alia*, facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Documents I may judicially notice include filings in other courts. *See, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts.").

## II. Ripeness

Ripeness doctrine is "rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). Its purpose is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 (1977). Building on this rationale, the Supreme Court has articulated specific ripeness requirements that apply to land use disputes. *See generally Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), *overruled in part by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). Federal courts have developed these requirements for constitutional land use disputes to avoid "becom[ing] zoning boards of appeal" and because land use controversies are "matters of local concern." *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 293 (2d Cir. 2022) (quotation marks omitted).

A plaintiff making a constitutional land use claim in federal court must "show that [] the state regulatory entity has rendered a 'final decision' on the matter." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (quoting *Williamson Cnty.*, 473 U.S. at 186). By requiring that a plaintiff first try to obtain relief from bodies other than the federal judiciary, the final decision rule promotes federalism and enforces the principle that, whenever possible, "disputes should be decided on non-constitutional grounds." *Murphy*, 402 F.3d at 348 (explaining that the final decision requirement "evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution"). The rule also ensures that federal courts resolving land use disputes have both a full factual record and clarity as to how the land use regulation applies to the property at issue. *See id.*

Although the final decision requirement has been interpreted as conditioning "federal review on a property owner submitting at least one meaningful application for a variance," this is not a strict requirement. *Id.* at 348 (citing *Williamson Cnty.*, 473 U.S. at 190). In fact, the Supreme Court has cautioned against mechanical application of the finality rule, requiring only that a plaintiff show "de facto finality," or that "the government is committed to a position." *Pakdel v. City and Cnty. of San Francisco*, 141 S. Ct. 2226, 2230 (2021). If, however, "avenues still remain for the government to clarify or change its decision," a claim may be unripe. *Id.* at 2231.

There are exceptions to the finality requirement. If a property owner can show that a zoning agency "has dug in its heels and made clear that all . . . applications [for variances] will be denied," then a property owner's failure to seek further review will be excused as futile. *Sayville*, 43 F.4th at 294. Likewise, a plaintiff need not seek a final decision if local authorities are manipulating "a zoning process out of discriminatory animus to avoid a final decision." *Id.* (quotation marks omitted).

Although the land use ripeness doctrine evolved in the context of Fifth Amendment takings claims, courts have applied these requirements to other claims in cases involving land use disputes. Specifically, courts in the Second Circuit have applied the final decision requirement to land use disputes involving First Amendment claims, *see Murphy*, 402 F.3d at 350–54, equal protection claims, *see Dean v. Town of Hempstead*, 163 F. Supp. 3d 59, 78 (E.D.N.Y. 2016), substantive due process claims, *see Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 96–97 (2d Cir. 1992), and procedural due process claims, *see Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 516 (2d. Cir. 2014). Whether the final decision requirement applies to non-takings claims turns on the factual relationship between the non-takings and takings claims. If a plaintiff has not experienced "some injury independent of the challenged land-use decision," *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d. Cir. 2014), and the non-takings claim arises "from the same nucleus of facts as a takings claim," *Kurtz*, 758 F.3d at 515, then the final decision ripeness requirement applies. A complaint, including "the way in which [plaintiffs] have framed the allegations" and the injury alleged, can be helpful tools in determining whether the alleged constitutional violations caused immediate injuries independent of the takings harm. *Adrian v. Town of Yorktown*, No. 03-CV-6604 (MDF), 2007 WL 1467417, at *6 (S.D.N.Y May 16, 2007).

## III. Due Process

Deciding whether a plaintiff has been deprived of property in violation of either the Procedural or Substantive Due Process Clause involves a two-part test. First, I must determine if a "constitutionally cognizable property interest is at stake." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). A plaintiff must demonstrate more than "an abstract need or desire for" the matter at issue to show a protected interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, "[t]o establish a constitutionally cognizable property interest, plaintiffs

must demonstrate a clear entitlement to the benefit in question." *Panetta v. Vill. of Mamaroneck*, No. 11-CV-4027 (VB), 2012 WL 5992168, at *3 (S.D.N.Y. Feb. 28, 2012). A clear claim of entitlement may be one "created and . . . defined by existing rules or understandings that stem from an independent source," such as state law or a contract. *Bd. of Regents*, 408 U.S. at 577–78. Also relevant is whether "the local authority has discretion to deny what is sought or, in the alternative, whether relief must be granted based upon objectively ascertainable criteria." *Vertical Broad., Inc. v. Town of Southampton*, 84 F. Supp. 2d 379, 391 (E.D.N.Y. 2000). If the local authority has discretion to deny what is sought, it is more likely that the plaintiff lacks a protectable property interest in it. *Id.* at 391–92.

"[A]lthough a public contract can confer a [constitutionally] protectible benefit, not every contract does so." *Martz v. Incorp. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994). In fact, "the type of interest a person has in the enforcement of an ordinary commercial contract often is qualitatively different from the interests the Supreme Court has thus far viewed as a property entitled to procedural due process protection." *Id.* (quotation marks omitted). For an interest in a contract to create a clear entitlement to property protectable by the Due Process Clause, the interest must be associated with a "cognizable status of the claimant beyond its temporary role as a governmental contractor." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988). For example, the Supreme Court has found that claimants have a property interest in a contract when the state's violation of the contract resulted in a revocation of a claimant's welfare benefits, *see generally Matthews. v. Eldridge*, 424 U.S. 319 (1976), or an elimination of a claimant's tenured status in public employment, *see generally Bd. of Regents*, 408 U.S. 564.

If a property interest exists, for the procedural due process claim I must ask "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S.

10

216, 219 (2011). For a substantive due process claim, on the other hand, I must ask whether the government conduct depriving the plaintiff of a property interest is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

A law may also violate the Due Process Clause if it is vague. *Farrell v. Burke*, 449 F.3d 470, 484–85 (2d Cir. 2006). There are two grounds on which a law may be unconstitutionally vague. First, a law is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). This principle is animated by the "constitutional principle that individuals should receive fair notice or warning" about what a law requires. *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007). Second, a law violates the vagueness due process principle if it "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. As long as a law provides "sufficiently clear standards to eliminate the risk of arbitrary enforcement," it will not be unconstitutionally vague under the second vagueness principle. *Farrell*, 449 F.3d at 494.

## IV.   *Monell* Claim

To state a 42 U.S.C. § 1983 claim against a municipality, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffok*, 980 F.3d 284, 297 (2d Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)). A plaintiff may plead the existence of an official policy or custom by alleging the existence of a "formal policy which is officially endorsed by the municipality." *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 311 (E.D.N.Y. 2016). Even if there is not an explicitly adopted official policy, a plaintiff may establish that such a policy or custom exists by alleging "practices so persistent and widespread [that they]

11

practically have the force of law," *Lucente*, 980 F.3d at 297 (quotation marks omitted); if, however, a pleading articulates "only isolated instances of unconstitutional behavior," a plaintiff will not have plausibly alleged municipal liability, *Douglas v. City of Peekskill*, No. 21-CV-10644 (KMK), 2023 WL 2632217, at *9 (S.D.N.Y. March 24, 2023) (quotation marks omitted). "[T]he decisions of a government's lawmakers [or] the acts of its policymaking officials" may also constitute an official policy or custom. *Lucente*, 980 F.3d at 297 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  For the acts of a policymaker to constitute an official policy, the plaintiff must allege that the policymaker has "final authority to establish municipal policy with respect to the action ordered." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (quoting *Pembaur v. City of Cinicinnati*, 475 U.S. 469, 481 (1986) (plurality op.)).

## DISCUSSION

### I.   Proper Defendants

Defendants correctly argue that because the Town Board and Planning Board are "agencies of a municipality" and lack "a legal identity separate and apart from the municipality," they are not suable entities. Defs.' Reply 20–21, ECF No. 21 (quoting *MetroPCS New York, LLC v. City of Mount Vernon*, 739 F. Supp. 2d 409, 419 (S.D.N.Y. 2010)); *see also T-Mobile Ne. LLC v. Town of Ramapo*, 701 F. Supp. 2d 446, 463 n.5 (S.D.N.Y. 2009) (explaining that "the Town, not the Town's agencies or boards, [including, for example, the Town's] Planning Board," is the "proper defendant in this case"). Because the Town Board and Planning Board are non-suable entities and no amendment to the pleadings could change this, I dismiss all claims against these entities with prejudice. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 725 (2d Cir. 2010) ("Reasons for a proper denial of leave to amend include . . . futility of amendment." (quotation omitted)). All subsequent discussion of a singular "defendant" refers to the Town of Brookhaven itself.

## II.     Material not in the Amended Complaint

To support its motion to dismiss, defendant appended several exhibits. According to the Town, exhibits one through six are documents related to the Grand Medford Estates and Quigley Estates performance bonds, including copies of the conditional final approvals and the punchlists for both subdivisions. *See* Defs.' Mot. Decl. Lisa Perillo, ECF No. 17-1. Exhibits seven through eleven all relate to the New York State eminent domain proceedings. *Id.*

I decline to determine whether I may take judicial notice of exhibits one through six as the documents are not necessary to my analysis, and so I do not rely on them. *See Tomasino v. Estee Lauder Cos.*, No. 13-CV-4692 (ERK) (RML), 2015 WL 1470177, at *6 (E.D.N.Y. March 31, 2015) ("It is not necessary to determine whether I may properly take judicial notice of Exhibits . . . because I find them unhelpful in considering the present case and so do not rely on them."). I do, however, take judicial notice of exhibits seven through eleven, which relate to the eminent domain proceedings. Exhibits eight through eleven were filed with the Supreme Court of New York in Suffolk County as part of the Town's eminent domain proceedings related to Lot 26. *See* Defs.' Mot. Ex. 8, ECF No. 17-10 (amended verified petition); *id.* Ex. 9, ECF No. 17-11 (vesting order); *id.* Ex. 10, ECF No. 17-12 (notice of acquisition); *id.* Ex. 11, ECF No. 17-13 (notice of claim). I may take judicial notice of these exhibits because they are court filings related to the claims Grand Medford brings in this case. *See Reyes v. Fairfield Props*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) ("It is well-settled that . . . the Court is entitled to take judicial notice of . . . documents filed in other courts and other public records."). I may also take judicial notice of exhibit seven, the meeting minutes from the March 11, 2021 Town Board Meeting at which the board decided to condemn Lot 26. *See* Defs. Mot. Ex. 7, at 80–84, ECF No. 17-9; *see also Quick Cash of Westchester Ave. LLC, v. Vill. of Port Chester*, No. 11-CV-5608, 2013 WL 135216, at *4

(S.D.N.Y. Jan. 10, 2013) (taking judicial notice of Village Board meeting minutes because they "are public documents").

## III.    Grand Medford's Takings Claim [3]

Grand Medford alleges that by conditioning the release of its performance bond on its completion of maintenance and repair items listed in the punchlist, the Town has effectively taken, without just compensation, the $680,000 in cash it posted as the performance bond. Am. Compl. ¶¶ 218–40. The Town argues, on the other hand, that I should dismiss Grand Medford's takings claim as unripe and for failing to state a claim. Defs.' Mot. 7–11 (ripeness); *id.* at 35–36 (failing to state a claim).  As the Town argues, this claim is not ripe.[4]

The Town's decision to issue the Medford Gardens Punchlist is the only final decision that plaintiffs explicitly allege the Town has made. *See* Am. Compl. ¶ 93 ("The Medford Gardens Punchlist amounts to a final administrative determination under relevant New York State law."). Grand Medford fails to explain, however, how this amounts to a final decision regarding the release of the performance bond. Instead, as Grand Medford acknowledges, the punchlist items are conditions it must meet to warrant the performance bond's release. Am. Compl. ¶ 82. The punchlist

---

[3] In the section of their Amended Complaint describing the Takings Clause violation, plaintiffs do not allege that any of the Town's actions with respect to Scheyer Court's performance bond constituted a taking. Am. Compl. ¶¶ 218–40. Plaintiffs do, however, cite to facts related to Scheyer Court in other portions of the Amended Complaint alleging other constitutional violations, suggesting that had they intended to allege that Scheyer Court experienced a taking, they would have included such facts in the takings portion of the Amended Complaint. *See, e.g., id., ¶* 166 (explaining, in the portion of the Amended Complaint alleging a § 1983 procedural due process claim, that Scheyer Court has a "cognizable property interest" in the $13,813 renewal premium.) Plaintiffs also fail to allege that any of the Town's actions constituted a taking of Scheyer Court's property in the facts portion of the Amended Complaint. *Id.* ¶¶ 97–131 (describing the facts related to Quigley Estates and Scheyer Court). As a result, I do not read plaintiffs' Amended Complaint as alleging that Scheyer Court experienced an unconstitutional taking.

[4] The final decision ripeness requirement applies to Fifth Amendment takings claims. *See Dougherty*, 282 F.3d at 88, *abrogated on other grounds by Knick*, 139 S. Ct. 2162.

itself is not a final decision.

In fact, the Town has not yet issued a final decision on the release of Grand Medford's performance bond.  Under Brookhaven Town Code section SR-17(F), for the Town to release a developer from a performance bond, the Planning Board must first recommend "to the Town Board the release of the performance bond." Town Code § SR-17(F). Only once the Town Board receives this recommendation, may it, along with the Highway Department, make the final decision to release a developer from a performance bond. *Id.* The Planning Board has not yet recommended that the Town Board release the performance bonds, and so the Town Board has not even begun the process of making a final decision on the matter. Pls. Opp'n Defs.' Mot. Dismiss 11 ("Opp'n"), ECF No. 19. To the extent that Grand Medford is challenging the Planning Board's refusal to recommend release of its performance bond, this is also not a final decision that could render its takings claim ripe. The Planning Board only has the authority to *recommend*, not authorize, the bond's release. *Cf. Cofran v. Bd. of Trustees of the N.Y. City Pension Fund*, 46 F.3d 3, 4 (2d. Cir. 1994) (determining that the plaintiff's due process claim challenging a city board's anticipated decision to involuntarily retire him "on the basis of a psychiatric disability" was not ripe because: (1) at the time that the plaintiff brought the challenge, the city board had yet to make a final decision and; (2) a medical board's recommendation to the city board that the plaintiff be dismissed was not a sufficient final decision). Grand Medford also acknowledges that the Town has yet to make a final decision when it points out that a New York State C.P.L.R. Article 78 proceeding on the release of its performance bond would not be ripe for the same reason. Opp'n 23–25.

Further, Grand Medford fails to allege that it has properly requested that the Planning Board make a recommendation to release it from the performance bond. Under the Brookhaven Town Code, to request release of a performance bond, subdividers must submit to the Planning

Board a letter requesting such release, "as-built plans" showing "locations, profiles and elevations of roads, curbs, sidewalks, drainage and other structures," "properly executed instruments of dedication," and a "certificate of title." Town Code §§ SR-17(D)–(F) (1990). Although Grand Medford argues that "the Town Board will not entertain an application by [it] to release the Performance Bond without a recommendation from the Planning Department," Am. Compl. ¶ 80, Grand Medford does not allege that it has submitted the required materials to the Planning Board which would warrant such a recommendation in the first place. *See generally id*. Instead, Grand Medford simply alleges that it has "performed all of [its] obligations required by the respective Performance Bonds, including [a long list of work items]," and that it has "demanded the release of the Performance Bond." *Id*. ¶¶ 8, 41–42, 76. Even if the Planning Board's failure to recommend release of the performance bond could be a final decision, the fact that Grand Medford has failed to allege that it has submitted all the required materials to request such a release further supports that its takings claim is not ripe. *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 599–600 (S.D.N.Y. 2013) (determining that there was no final decision for ripeness inquiry purposes because the plaintiff had "yet to submit a single formal application to the [defendant] for approval" and "informal efforts to gain approval for land development are insufficient, by themselves, to constitute final government action" (quotations omitted)).

Finally, the futility exception to the ripeness requirement does not apply. Although Grand Medford does not explicitly invoke this exception, the language it uses to characterize the Town's actions sounds in futility arguments. *See, e.g.,* Am. Compl. ¶ 137 ("The Town has interpreted [the] Town Code . . . to grant the Planning Board the authority to refuse to release a performance bond and force the renewal of surety bonds posted therefore ***indefinitely*** until such time as . . . [the]

Planning Department [staff] are satisfied with a list of conditions that they arbitrarily assemble . . . ."). For the futility exception to apply, a plaintiff must demonstrate: (1) "that plaintiff has filed at least one meaningful application [for a variance], and (2) the inevitability of refusal of the application, taking into consideration factors such as the defendants' hostility, delay and obstruction." *Vill. of Pomona*, 915 F. Supp. 2d at 601.

As I previously discussed, Grand Medford has failed to allege that it has properly applied to the Planning Board for release of its performance bonds. Even if it had satisfied the first prong of the futility requirement, Grand Medford has not alleged facts sufficient to meet the second prong. In other sections of the Amended Complaint, Grand Medford alleges that the Town's conduct "is based on [its] malicious and bad-faith intent to injure [p]laintiff[] . . . ." Am. Compl. ¶ 44. Grand Medford does not, however, plead facts to demonstrate how defendant's conduct is malicious or in bad faith, beyond threadbare allegations that the Town treats other contractors differently and that the release of the performance bond has been delayed. *Id.* ¶¶ 212–17 (alleging bad faith differential treatment but failing to explain how other developers are similarly situated); *id.* ¶ 137 (alleging potentially indefinite delay of the bonds). "Conclusory assertions that defendant[] acted with malicious intent and bad faith . . . in order to delay and obstruct . . . [the release of Grand Medford's bonds] without more is insufficient to establish that the refusal [to release the bonds] . . . is certain and invoke the narrow futility exception." *Country View Ests. @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 154 (E.D.N.Y. 2006) (internal quotations omitted). Additionally, Grand Medford first "demanded" the release of its performance bond on July 22, 2020, Am. Compl. ¶ 41, and filed its lawsuit on December 23, 2022. *See* Original Compl., ECF. No. 1. A delay of approximately 2.5 years from when Grand Medford first demanded release of its performance bond, without more, is insufficient to justify application of the futility exception.

*See Country View Estates*, 452 F. Supp. 2d at 155 (determining that an approximately two-year delay was "insufficient to create futility, especially when considered in comparison to the eight-year delay [in the application process] in *Williamson County* where the Supreme Court found the claim was not ripe") (quoting *Goldfine v. Kelly*, 80 F. Supp. 2d 153, 161 (S.D.N.Y. 2000)).

Further, the Town has not completely "dug in its heels" and made clear that all efforts to guarantee release of the performance bond would be futile. *Sayville*, 43 F.4th at 294.  As Grand Medford acknowledges, Scheyer Court's negotiations with the Planning Board over the amount of the Quigley Estates performance bond were not futile. When Scheyer Court urged the Town to decrease the performance bond because it had already completed some of the work the bond covered, the Town agreed and thereafter, decreased the bond's value. *See* Am. Compl. ¶¶ 108–13. Although release of a performance bond and decreasing the value of a performance bond are different, both involve an acknowledgement that work under the bond has been successfully completed. These successful negotiations between the Planning Board and Scheyer Court demonstrate that the Town is not unwilling to recognize when work has been completed. *See Pakdel*, 14 S. Ct. at 2231 (explaining that a claim may be unripe if "avenues still remain for the government to clarify or change its decision"); *Sunrise Detox V., LLC*, 769 F.3d at 124 (determining that the plaintiff's equal protection lawsuit challenging an agency commissioner's decision that it could not develop its property was not ripe because that decision was not final and was instead subject to change pending an appeal to the Zoning Board of Appeals).

As a result, I dismiss Grand Medford's takings claim as unripe.

## IV.   Plaintiffs'[5] Due Process Challenge to the Brookhaven Town Code sections SR-17 (C) and (F) [6]

---

[5] I read this section of the Amended Complaint as applying to both Grand Medford and Scheyer Court because plaintiffs, at times, refer to themselves in the plural. Am. Compl. ¶¶ 136–37, 148.
[6] Plaintiffs allege in their as-applied due process challenge to the Brookhaven Town Code that the

Plaintiffs claim that sections SR-17 (C) and (F) of the Brookhaven Town Code violate the Due Process Clause to the extent that they allow the Planning Board to: (1) "extend . . . the term of a performance bond in perpetuity;" (2) "add to a developer's obligations under a conditional final approval and performance bond without due process;" and (3) "compel a developer to pay for repairs to both public and private improvements without notice or an opportunity to be heard." Am. Compl. 154a–154b. The Town argues, on the other hand, that I should dismiss plaintiffs' as-applied due process challenge to the Brookhaven Town Code as unripe and as meritless. Defs.' Mot. 7–11 (ripeness); *id.* 12–18 (merits argument). Because portions of these due process challenges are unripe and the challenges are otherwise unmeritorious, I dismiss them.

### A. Ripeness

To some extent, all three parts of plaintiffs' as-applied challenge to the Brookhaven Town Code share some common facts with the takings claim. In the takings claim, Grand Medford alleges that the Town took its rights "in cash posted as the Performance Bonds" by improperly conditioning the release of the bond on its completion of the punchlist items and other maintenance and repairs. *See* Am. Compl. ¶¶ 220, 223. Likewise, plaintiffs' due process challenge rests on the theory that the Town's interpretation of the Town Code empowers it to hold plaintiffs' performance bonds until they complete the punchlist items and other maintenance work without ever having a hearing. *Id.* ¶¶ 130, 137, 139–141.

Despite the factual similarity between the takings and the due process claims, plaintiffs allege that they suffered at least one injury due to the Town's interpretation of the Brookhaven

---

Town's interpretation of this code violates both their procedural and substantive due process rights. *See* Am. Compl. ¶¶ 142–50. As a result, I will refer to this claim generally as a due process challenge.

Town Code that is distinct from the injury that plaintiffs contend resulted from the taking. Plaintiffs' alleged due process injuries resulting from the Town's interpretation of the Brookhaven Town Code are twofold and include: (1) the loss of their rights to the performance bonds due to the unlawful extension of their bonds, *id*. ¶ 154a; and (2) the "hundreds of thousands of dollars" plaintiffs will have to spend to complete the repair work and the work the Town added to their performance bonds, *id.* ¶¶ 81, 154a-b. The first injury—the loss of the rights to the performance bonds due to unlawful extension of the bonds' terms—is the same injury Grand Medford alleges in its takings claim. *See id*. ¶¶ 231, 234 (describing the takings claim injuries). As a result, the final decision ripeness requirement applies to this portion of the due process claim.[7] *See Kurtz,* 758 F.3d at 509–10, 515–16 (explaining that the final decision ripeness requirement applied to the plaintiffs' due process claim arising from Verizon's installation of terminal boxes on their properties because all of the procedural injuries were related to their allegation that they did not receive just compensation from Verizon for the installation of the boxes, which was also the basis of the associated takings claim); *Adrian*, 2007 WL 1467417, at *16–17 (determining that the final decision requirement applied to the plaintiffs' procedural due process claim because the injury that the alleged violation caused—plaintiff's loss of development potential on a piece of property— was coextensive with the takings injury alleged).

For the reasons I previously discussed, defendant's refusal to release the performance bond is not a final decision. *See supra*, Discussion Section III. As a result, this portion of plaintiffs' as-applied due process challenge is not ripe. *Id.* Scheyer Court, however, did not bring a takings claim

---

[7]Although Scheyer Court did not challenge the Town's retention of the Quigley Estates performance bond as an unconstitutional taking, I still apply the final decision ripeness requirement to its due process challenge. *See Kurtz*, 758 F.3d at 515 ("[A]pplying [the final decision ripeness requirement] . . . to [a] due process claim[] . . . prevents evasion of the ripeness test by artful pleading of a takings claim as a due process claim.").

against the Town for its retention of the Quigley Estates performance bond, and so I did not determine whether that claim was ripe. For the same reasons that defendant's decision to not release Grand Medford's performance bond is not a final decision, the Town's decision to not release the $13,813 Scheyer Court paid to renew the performance bond is also not final. The Town has adjusted the Scheyer Court performance bond, indicating that negotiations with it are not futile, Am. Compl. ¶¶ 108–13; under Brookhaven Town Code section SR-17(F) the Planning Board only has authority to recommend release of the performance bond to the Town Board, which is empowered to make the final decision; and Scheyer Court only alleges that it "demanded release of the Performance Bond," *id*. ¶¶ 117–18, not that it submitted the materials necessary to properly request release of the performance bond under Brookhaven Town Code sections SR-17(D)–(F).

The final decision ripeness requirement does not apply, however, to the portions of plaintiffs' as-applied due process claim challenging the Brookhaven Town Code for allowing defendant to add work items to plaintiffs' performance bonds and forcing them to continue doing repair work. Although the requirements that plaintiffs complete additional work and continue making repairs are conditions they must meet to warrant release of the performance bonds, as framed by the plaintiffs, these requirements also result in their own independent injuries—the expenditure of additional resources. *See, e.g., id*. ¶ 81 (alleging they will have to spend "hundreds of thousands of dollars [on the additional] maintenance work"). This is the type of independent injury that some courts have determined warrants not applying the final decision ripeness requirement to non-takings claims. *See, e.g., Dougherty,* 282 F.3d at 87 (determining that the ripeness requirement did not apply to a First Amendment claim in a land use case because the injury associated with the First Amendment retaliation claim—revocation of a permit—was immediate and "significantly different from his due process and equal protection claims," which

were related to defendant's rejection of plaintiff's "development plan"); *Harris v. Cnty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990) (determining that the final decision ripeness requirement did not apply to the plaintiff's procedural due process claim even though that claim was "related to his taking claim" because he was challenging the at issue "rezoning decision in isolation, as a single decision with its own consequences, rather than as one in a series of County actions resulting in a taking"). In *Harris*, for example, the Ninth Circuit determined that the final decision ripeness requirement did not apply to the plaintiff's procedural due process claim, which in addition to challenging the "deprivation of [the commercial] use" of its property—a takings-style injury—also challenged the requirement that it pay a "fee to apply to regain the commercial use of its land"—an entirely distinct injury. *Harris*, 904 F.2d at 501. Similarly, plaintiffs here allege that the Town's interpretation of the Town Code causes them an independent injury—the required expenditure of additional funds to maintain and repair their subdivisions—in addition to the takings injury—the Town's refusal to release the performance bonds. As a result, the final decision ripeness requirement does not apply to the portions of plaintiffs' as-applied due process claim alleging that the Town is requiring additional work and repair.

### B. Merits

To state a due process claim, a plaintiff must have a constitutionally cognizable property interest. *See Villager Pond, Inc.*, 56 F.3d at 378. The only property interest that plaintiffs assert in the portion of the Amended Complaint alleging an as-applied due process challenge is Grand Medford's interest in the $680,000 in cash posted as a performance bond. Am. Compl. ¶ 142.[8] As

---

[8] Although in Count I of the Amended Complaint plaintiffs do not argue that the "renewal premium of $13,813.00" that Scheyer Court had to pay is a property interest, Am. Compl. ¶ 166, I read this section of the Amended Complaint as also asserting Scheyer Court's renewal premium as a property interest because plaintiffs refer to themselves in the plural, *id.* ¶¶ 136–37, 148.

I previously discussed, however, neither Grand Medford's claim nor Scheyer Court's claim to its performance bond is ripe. *See supra* Discussion Section IV.A. Plaintiffs do not explicitly allege another property interest. They do, however, allege that they will have to spend "hundreds of thousands of dollars" on additional maintenance work. *Id.* ¶ 81–82. I read this as another potentially relevant property interest. Neither of these potential property interests, however, are constitutionally cognizable.

Even if plaintiffs' claims to the release of their performance bonds were ripe, plaintiffs have not demonstrated a clear entitlement to their release. First, the Brookhaven Town Code grants the Town significant discretion in determining when and whether to release a developer from a performance bond. Under Brookhaven Town Code section SR-17(C), the Planning Board has the discretion to extend the term of the bond "in appropriate cases where such action would not be contrary to the intent of this regulation." Brookhaven Town Code § SR-17(C) (1990). The regulation also grants the Planning Board the discretion to "recommend to the Town Board the release of the performance bond" when it has determined that the work under the bond has been satisfactorily completed. *Id.* § SR-17(F). Even after the Planning Board has made such a recommendation, the Town Board and the Highway Department must approve the improvements before it authorizes release of the performance bond. Brookhaven Town Code § SR-17(F). The significant discretion that the Town Code grants the Planning Board and Town Board to determine when the terms of the performance bond have been met weighs against plaintiffs' argument that they have claims of entitlement to the bonds' release. *See Cunney v. Bd. of Trs. of Grand View*, 56 F. Supp. 3d 470, 497, 500–01, 505 (S.D.N.Y. 2014) (determining that a plaintiff did not have a property interest in the issuance of a building permit because local law vested city officials with discretion in determining whether plaintiff's construction complied with all applicable laws and

regulations).

Likewise, New York State law does not provide plaintiffs with a clear claim of entitlement to the release of their performance bonds. The applicable New York State law, NY Town § 277(9), also grants the Town discretion—although somewhat less so than the local law—over the terms and length of performance bonds. *See* NY Town § 277(9)(d) ("Any such performance bond . . . shall run for a term to be fixed by the planning board, but in no case for a longer term than three years, provided, however," that the term may be extended with consent of the parties to the bond); *id.* (indicating that a Planning Board may reduce the amount of the performance bond if it "decide[s] at any time during the term of the performance bond" that work has been adequately completed). This is discretion that the Town has utilized in this case, decreasing the amount of the Quigley Estates performance bond after Scheyer Court demonstrated completion of some work items. *See* Am. Compl. ¶¶ 108–113. Although under the New York State law extending the bond term beyond three years requires the parties' consent, plaintiffs have cited nothing relevant indicating that the law grants them an entitlement to release of the bond if it exceeds a three-year term. *See generally* Pls.' Opp'n.[9] Instead, to the extent that work on a bond has not been completed and a bond has not been renewed, New York State law contemplates default proceedings to determine the parties' outstanding obligations. NY Town law §277(9)(e) (indicating that the Town Board may declare a performance bond in default and seek "the sum remaining payable

---

[9] In fact, when plaintiffs filed this lawsuit, Scheyer Court's performance bond had only been posted for, at most, two years. In January 2021 the Planning Department agreed to accept a $460,428.50 performance bond from Scheyer Court, which it later posted. Am. Compl. ¶ 113. In April 2021, this was converted to a surety bond. *Id.* Plaintiffs filed this lawsuit in December 2022. *See* Original Compl. From the date that the Planning Department agreed to accept Scheyer Court's performance bond to the filing of this lawsuit, three years have not passed, providing further support for the conclusion that Scheyer Court does not have a clear entitlement to release of the Quigley Estates performance bond.

thereunder" if work is not completed).

Ultimately, the discretion that these local and state laws grant the Town to determine whether to release a performance bond supports the Town's argument that plaintiffs do not have a clear claim of entitlement to their release. *See Vertical Broad., Inc.,* 84 F. Supp. 2d. at 424–25 (deciding that the plaintiffs did not have a cognizable property interest "in the permits and variances" they sought because, under state law, whether to grant a variance was a discretionary decision for defendants to make based upon a balancing of several different factors).

Further, although plaintiffs assert that they have completed all the work that the performance bonds require to a satisfactory level, Am. Compl ¶¶ 40, 116, they have failed to plead that they have submitted all the materials necessary to warrant release of the performance bonds under the Brookhaven Town Code. *See supra* Discussion Section III. Instead, plaintiffs have simply "demanded" the performance bonds' release. Am. Compl. ¶¶ 41–42, 76, 117–18. These facts further demonstrate that plaintiffs have failed to adequately allege a clear entitlement to release of the performance bonds under New York State and local law.

To the extent that plaintiffs assert that they have a clear entitlement to release of the performance bonds because they have fulfilled the bond's terms, *see id.* ¶ 8, this also is incorrect. Plaintiffs' rights under the performance bonds are contractual in nature, not constitutional. In New York, any right that plaintiffs claim in a performance bond is governed by New York contract law. *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 n.4 (2d Cir. 2009) ("In New York, a bond is a contract[,] and [a court] therefore look[s] to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond." (quotations omitted)). Additionally, a performance bond is an "ordinary or routine government contract." *Gizzo v. Ben-Habib*, 44 F.Supp.3d 374, 385 (S.D.N.Y 2014). It is not the type of contract that impacts the status of a

claimant as, for example, a permanent employee of the state or a dependent on the state. *See id.* (describing the interests that may elevate an alleged contractual violation to the constitutional level). As a result, the contracts for the performance bonds do not involve constitutionally cognizable interests.

Plaintiffs also may be asserting a property interest in the "hundreds of thousands of dollars" they must spend on additional maintenance work which was not originally a condition of the performance bond or the conditional final approval. Am. Compl. ¶¶ 81–82. As I just discussed, however, this alleged injury is contractual in nature, not constitutional. Because contract law governs disputes over performance bonds, *see Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 n.4 (2d Cir. 2009), whether the Town has unlawfully added work to a performance bond requiring expenditure of additional resources does not necessarily implicate plaintiffs' constitutional rights, *see Martz*, 22 F.3d at 30 ("[T]he type of interest a person has in the enforcement of an ordinary commercial contract often is qualitatively different from the interests the Supreme Court has . . . viewed as a property entitled to . . . due process protection." (quotation omitted)). Further, plaintiffs' allegation that the Town's actions are negatively affecting their "ability to construct new land and infrastructure developments," is also not a valid property interest. *Id.* ¶ 11. Although the resources plaintiffs expend to meet their contractual obligations may negatively affect their ability to do business, "the activity of doing business, or the activity of making a profit is not a property in the ordinary sense." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675 (1999); *see also Tuchman v. Connecticut*, 185 F. Supp. 2d 169, 170–71, 174 (D. Conn. 2002) (concluding that the plaintiffs did not have a constitutional property interest in conducting its "transshipment business" after Connecticut ordered the plaintiffs to "cease and desist all transshipment business" because "business in the

26

sense of the activity of doing business . . . is not property in the ordinary sense" (quoting *Coll. Sav.*, 527 U.S. at 675)); *Salemo v. Murphy*, No. 11-CV-2525 (TPG), 2012 WL 4714765, at *1–2, *9 (S.D.N.Y. Sept. 27, 2012) (dismissing plaintiff's claim that the defendants' actions investigating his alleged criminal activity deprived him of property by causing his business to go bankrupt because "a businessperson has no property interest in the activity of doing business itself"). As a result, any changes to the terms of the performance bonds and the impact those changes may have on plaintiffs' businesses do not implicate a property interest that the Due Process Clause protects.

Because plaintiffs have failed to establish that they have a constitutionally cognizable property interest at stake, I do not need to move to the second part of either the procedural or substantive due process tests.

Plaintiffs also argue that the Town Code is unconstitutionally vague because the Town's interpretation of the code "results in the Town being able to retain the performance bonds for an indefinite period of time." Am. Compl. ¶ 151. "Where, as here, First Amendment rights are not implicated," I evaluate plaintiffs' vagueness challenge "in light of the specific facts . . . [and] not with regard to the facial validity of the . . . statute . . . at issue." *United States v. Holcombe*, 883 F.3d 12, 17 (2d Cir. 2018) (quotations omitted). Further, because the local law plaintiffs challenge is not criminal legislation, the vagueness standards are more relaxed. *See Conn. Bar Ass'n v. United States*, 620 F.3d 81, 100 (2d Cir. 2010). Plaintiffs' characterization of the statute as vague is conclusory, and they do not point to any language in the statute, or even a specific provision, to support their argument. I read their Amended Complaint as alleging that the Brookhaven Town Code is unconstitutionally vague because it does not limit a performance bond term to a specific number of years and, as a result, a reasonable person may not know how long they are subject to

the terms of the performance bond. *See* Am. Compl. ¶ 151.

The ordinance, however, is not so broad. In fact, Brookhaven Town Code § SR-17(C) indicates that a "performance bond shall run for a period of one year" and that "the Planning Board can act to extend the term of the bond in appropriate cases where such action would not be contrary to the intent of this regulation." That the statute does not set a specific numerical benchmark for how many times the Planning Board may extend the term of the bond does not necessarily mean that the ordinance is vague. *See VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186–97 (2d Cir. 2010) (determining that a statute that defined a "sexually oriented business" as "an establishment that has a substantial or significant portion of its stock in trade in adult merchandise" was not unconstitutionally vague for failure to provide notice of exactly how much adult merchandise was required to trigger the statute or for "encourage[ing] arbitrary . . . enforcement"). Likewise, the statute also does not grant the Planning Board unfettered discretion to extend the term of a performance bond, but instead limits its authority to do so only when it would not be "contrary to the intent of this regulation"—a phrase given meaning by the other provisions outlining the specific materials developers must submit to warrant release of performance bonds. *See id.* §§ SR-17 (D)–(F). As a result, plaintiffs have failed to adequately allege that the Brookhaven Town Code is unconstitutionally vague.

Lastly, plaintiffs contend that the Brookhaven Town Code is "overbroad inasmuch as its prospective reach includes constitutionally protected rights." Am. Compl. ¶ 153. Because this is the only reference plaintiffs make to their overbreadth allegation, and because I have determined that plaintiffs failed to establish that the Brookhaven Town Code violates their due process rights, I dismiss this claim.

## V.   Plaintiffs' § 1983 Procedural Due Process Claim[10]

Plaintiffs' 42 U.S.C. § 1983 procedural due process claim is duplicative of plaintiffs' as-applied due process challenge to the Town's interpretation of the Brookhaven Town Code. *See* Am. Compl. ¶¶ 167–68. I therefore dismiss the § 1983 challenge articulated in Count III on the same grounds as I dismiss the as-applied due process challenge in Count I.[11]

## VI.   Grand Medford's § 1983 Substantive Due Process Claim[12]

Grand Medford alleges that the Town violated its substantive due process rights in two ways. First, it alleges that the Town violated its rights by refusing to release its performance bond. *Id.* ¶ 245. I dismiss this substantive due process claim for the same reasons that I dismissed Grand Medford's as-applied due process claim based on this alleged deprivation. *See supra* Discussion Section IV.  Grand Medford's second substantive due process claim is that the Town violated its rights by delaying the issuance of two certificates of occupancy from November 2020 to April

---

[10] Plaintiffs do not indicate whether the §1983 due process claim alleged in Count III is procedural or substantive. Because plaintiffs phrase the injuries they received in this count in terms of lack of "notice or opportunity to be heard," Am. Compl. ¶¶ 164, 167–68, and because they do not refer to the Substantive Due Process Clause anywhere in Count III, I read this claim as alleging that the Town violated plaintiffs' procedural due process rights.

[11] In their § 1983 procedural due process claim, plaintiffs do not reference the bonds Grand Medford had to post to secure the certificates of occupancy. *See* Am. Compl. ¶¶ 34–39; *id.* ¶¶ 163–74 (Count III). Even if Grand Medford asserted the Town's retention of the certificate of occupancy bonds as a basis for its due process claim, it failed to demonstrate that it has a cognizable property interest in the release of these bonds. *Id.* ¶¶ 163–74. Under Town of Brookhaven Code section SR-17(E)(1), if a developer applies for a certificate of occupancy "prior to the completion and acceptance of the public improvements in the subdivision," the developer must deposit with the Town a sum of money, which the Town will hold "pending the completion and acceptance of the public improvements." § SR-17(E)(1). As I have previously discussed, the Town has discretion to determine when public improvements are completed. *See id.* §SR-17(F). As a result, Grand Medford has no constitutionally cognizable property interest in the immediate release of these bonds.

[12] Plaintiffs do not reference Scheyer Court's bond in this claim, and Scheyer Court did not allege any issues with the certificates of occupancy. As a result, I conclude that only Grand Medford brings this claim.

2021. Am. Compl. ¶ 246. Grand Medford alleges that this delay created an injury independent from the injury the Town caused by refusing to release the performance bond. *Id.* ¶ 66 ("This refusal to issue the final 2 Certificates of Occupancy tied up almost $1 million in capital and prevented bona fide third party purchasers from closing on the title to these finished dwellings . . ."). Because Grand Medford pleads an independent injury arising from the Town's delayed issuance of the certificates, the final decision ripeness requirement does not apply to this Substantive Due Process Clause claim. *Sunrise Detox V, LLC.*, 769 F.3d at 123 ("[A] plaintiff alleging [a non-takings claim] in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision.").

I nonetheless dismiss this claim because Grand Medford fails to state a claim under *Monell*. To plead municipal liability, a plaintiff must allege that it was deprived of its constitutional rights pursuant to "an official policy or custom." *Lucente*, 980 F.3d at 297. A plaintiff may establish the existence of an official policy or custom in several ways, including by alleging that: (1) an officially adopted policy exists; (2) the defendant's actions are so widespread and persistent that the actions constitute a *de facto* policy; or (3) the defendant is a policymaker with the authority to make a final decision on the relevant matter. *See Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 99 (2d Cir. 2020).

Beyond the conclusory allegations that defendant was acting pursuant to a "town policy," *see, e.g.,* Am. Compl. ¶¶ 59, 250, Grand Medford does not allege facts sufficient to demonstrate the existence of a Town policy permitting delayed issuance of the certificates of occupancy under *Monell*. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (dismissing a disparate treatment claim against New York City because the plaintiff failed to adequately allege

the existence of an official policy, beyond her "general and conclusory allegation that there was . . . a policy"); *Green v. City of Mt. Vernon*, 96 F. Supp. 3d 283, 302 (S.D.N.Y. 2015) ("[T]o survive a motion to dismiss, Plaintiffs cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a [policy] . . . exists." (internal quotations omitted)). First, Grand Medford acknowledges that this policy is not officially adopted or codified pursuant to the Town's legislative process. Am. Compl. ¶ 59 ("This policy is NOT published anywhere, is not in the Town code, is not on the permits, filed map, approval grants or on the multiple court ordered stipulation."). Grand Medford also recognizes that "[t]his purported Town policy . . . [was] not applied to the subdivisions of dozens of other similarly situated Brookhaven developers," indicating that this practice is not pervasive or widespread. *Id*. ¶ 60. Finally, in neither its Amended Complaint nor its opposition to the Town's motion to dismiss does Grand Medford explicitly allege that a policymaker with the authority to render a final decision on issues related to certificates of occupancy delayed the issuance of the certificates. *See id.*; Opp'n 36, 38–39.[13]

---

[13] In its opposition papers, Grand Medford argues that the Town held back two certificates of occupancy pursuant to a Town policy, referencing emails from several Town employees admitting that this policy exists. *See* Opp'n 36. None of the individuals referenced are party to this lawsuit, and Grand Medford referenced neither the individuals nor their communications in the Amended Complaint. *See generally* Am. Compl. As a result, I decline to consider this information. *See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff 'cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'") (quoting *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209, n.8 (S.D.N.Y. 2013)). Further, it is possible that Grand Medford included this information to demonstrate how it may amend its complaint, although it did not specifically assert that. Even assuming that Grand Medford does wish to amend its Complaint to include this information, it neither asserts that any of these individuals are *Monell* policymakers nor explains how they may have final decision-making power regarding issuance of certificates of occupancy. *See* Opp'n 36. As such, if this information was intended as a proposed amendment, it would be futile because it does not sufficiently state a *Monell* claim. *See Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 454 (S.D.N.Y. 2012) (dismissing a *Monell* claim partially because "[n]othing in the[] allegations suggest[ed] that the[] [defendants] were final policymakers . . . or that their actions

Although Grand Medford alleges that the Planning Department was responsible for the purported policy, *see* Am. Compl. ¶ 53 (describing the policy as a "decree by the Planning Department staff"), it fails to include any facts or cite to any law to support a conclusion that the Planning Department is final decisionmaker on this issue. *See*, *id.*; Opp'n 38–39.[14] As a result, Grand Medford fails to adequately allege that a policy exists under the policymaker theory. *See Green*, 96 F. Supp. 3d at 302 (determining that plaintiffs' *Monell* claim failed partially because plaintiffs did not "allege any facts to state a plausible claim that 'the challenged action was directed by an official with final policymaking authority'") (quoting *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003)); *see also Green Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (explaining that although whether a police chief "is a final policymaker is ultimately a legal rather than factual question, that does not relieve [the plaintiff] of the obligation to plead in some fashion that [the police chief] had final policy making authority, as that is a key element of a *Monell* claim").

Because Grand Medford failed to adequately allege that the Town acted pursuant to a policy or custom under any *Monell* theory in delaying the issuance of the certificates of occupancy, I dismiss the portion of its § 1983 substantive due process claim based on this allegation.[15]

---

constituted official [] policy"); *Rukoro v. Fed. Republic of Ger.*, 976 F.3d 218, 228 (2d Cir. 2020) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies.").

[14] In fact, under the Town Code of Brookhaven, the Planning Board only has the authority to recommend changes to zoning law and policy to the Town Board, not institute final changes itself. Brookhaven Town Code § 85-5 (2023).

[15] Grand Medford generally alleges that all defendants acted "collectively" but fails to assert facts to demonstrate how defendants worked together on this alleged policy. *See* Am. Compl. ¶ 222. This theory of collective action is, therefore, insufficiently pleaded.

## VII.    Plaintiffs' § 1983 Equal Protection Claims[16]

Plaintiffs also allege that the Town is violating their equal protection rights by treating them differently from other subdivision developers in Brookhaven. Specifically, plaintiffs contend that the Town does not: (1) hold other developers to performance bond terms longer than three years, Am. Compl. ¶ 204[17]; (2) force other developers to continue repair work and to do work not in the original performance bond, *id*; (3) delay issuing certificates of occupancy to other developers, *id.*; and (4) fabricate SWPPP requirements for other developers, *id.* ¶ 205. For reasons I have already discussed, I dismiss as unripe all equal protection claims related to the Town's refusal to release the performance bonds. *See supra* Discussion Section IV.A.[18] On the other hand,

---

[16] Plaintiffs bring two equal protection claims: one under a theory of selective enforcement, and a second under a class of one theory. Am. Compl. ¶¶ 202–17. Plaintiffs do not mention Scheyer Court in either of the sections describing these allegations. *Id.* Because plaintiffs occasionally refer to themselves in the plural, however, I will analyze how these claims apply to Scheyer Court. That said, the only portion of the equal protection claims relevant to Scheyer Court are those related to the performance bond because the Town neither delayed issuance of certificates of occupancy to Scheyer Court nor fabricated SWPPP requirements for it. *See generally id.*

[17] Plaintiffs allege that: "Grand Medford was treated differently from other similarly situated subdivision developers by virtue of the full panoply of unlawful municipal conduct heretofore alleged." Am. Compl. ¶ 204. I read this assertion as invoking all the allegations related to the performance bond including its delayed release, the addition of work terms, and the requirement to continue repair work.

[18] In the Equal Protection Clause sections of the Amended Complaint, plaintiffs request that I grant them compensatory damages. Am. Compl. ¶¶ 210, 216. In *Sunrise Detox*, the Second Circuit recognized that a final decision is typically not required for a plaintiff to seek damages for Equal Protection violations. 769 F.3d at 122–23. The Court pointed out, however, that in such cases, "the victim of discrimination normally seeks compensation, in the form of money damages." *Id.* at 123. In that case, the plaintiff did not seek compensatory damages for the alleged discrimination, but instead sought an injunction authorizing its construction project. *Id.* The Court reasoned that this relief brought the case "squarely within the compass of" the final decision ripeness requirement because it would not be able to discern whether the "allegedly discriminatory decision of the official had any effect at all on Sunrise's application [to proceed with the construction project]" until the defendant made a final decision on that application. *Id.* As a result, the Court applied the final decision ripeness requirement. *Id.* It declined to decide, however, whether the requirement would apply to a plaintiff seeking compensation for an alleged Equal Protection Clause violation in a land use dispute. *Id.* In *Village Green at Sayville, LLC v. Town of Islip*, the Second Circuit likewise declined to determine whether the final decision ripeness requirement applied to a

the final decision ripeness requirement does not apply to the claims related to additional work, repair work, and the delayed issuance of the certificates of occupancy. *See supra* Discussion Section IV.A (additional and repair work); *id.* Section VI (certificates of occupancy). The final decision ripeness requirement also does not apply to the claim related to the allegedly fabricated SWPPP requirements because Grand Medford contends that these requirements caused an injury independent of the takings claim. Am. Compl. ¶¶ 46–48. I dismiss these remaining equal protection claims, however, for failure to state a claim under *Monell*.

As discussed regarding its substantive due process claim, Grand Medford fails to adequately allege that the Town acted pursuant to an official policy or custom when it delayed issuing the two certificates of occupancy from November 2020 to April 2021, much less that a Town policy exists that authorizes selective enforcement of certificate of occupancy policies. *See supra* Discussion Section VI.

Similarly, Grand Medford did not adequately allege that the Town incorrectly subjected it to SWPPP requirements from January 2020 to September 2020 pursuant to a policy or custom. *See* Am. Compl. ¶¶ 44–52 (describing the SWPPP requirements). Grand Medford contends that "[t]he fabricated SWPPP requirement was part of a Town endorsed policy to extort developers for additional and unnecessary reinspection fees and to delay the final approval of . . . improvements."

---

plaintiff's Equal Protection claim, even though the plaintiff sought compensatory damages for discrimination. 43 F.4th at 295 n.5. The Court reasoned that because the plaintiff's "claim for monetary damages [did] not sound in dignitary or emotional harm" and because it concluded that the defendant did reach a final decision regardless, it did not need to decide the question *Sunrise Detox* left open. *Id.* Like the plaintiff in *Sayville*, plaintiffs in this case did not articulate the harm they experienced due to the Town's alleged discrimination in emotional or dignitary terms. Instead, the only harm that plaintiffs allege resulted from the discrimination related to the performance bonds is the fact that the Town has refused their release. Am. Compl. ¶¶ 202–17. As a result, I decline to exempt plaintiffs' performance bond Equal Protection Clause claim from the final decision ripeness requirement.

*Id.* ¶ 51. It fails, however, to cite to any provision of the Brookhaven Town Code or other body of law authorizing this fabricated requirement. Instead, the Amended Complaint implies that the Town held Grand Medford to these SWPPP requirements by mistake. *Id.* ¶ 49 ("This wrongful SWPPP condition was later acknowledged as baseless by the Town."). Grand Medford also defeats any inference that imposing fabricated SWPPP requirements on developers was a widespread Town custom, as it alleges that the Town singled it out in imposing these requirements. *Id.* ¶ 205 ("Of the many subdivision applicants in the Town of Brookhaven who have sought to have their bonds released . . . only [p]laintiffs have been subjected to . . . fabricated SWPPP violation declarations."). Finally, Grand Medford does not contend that a policy maker with final decision-making authority on SWPPP imposed these requirements. Although, Grand Medford alleges that the Town of Brookhaven Planning Department ("Planning Department") denied final approvals for five single-family dwellings based on its non-compliance with the SWPPP requirements, *id.* ¶ 44, it pleads no facts and cites to no law indicating that the Planning Department is a relevant final decisionmaker. As a result, I dismiss the equal protection claims arising from the fabricated SWPPP requirements for failing to state a claim under *Monell*.

Lastly, I dismiss plaintiffs' equal protection claims arising from the allegations that the Town neither adds to other developers' performance bond obligations nor forces them to do repair work. Like their other equal protection claims, plaintiffs fail to identify an officially adopted Town policy that authorizes unconstitutional selective enforcement of these performance-bond related requirements. In arguing that a Town policy exists for *Monell* purposes, plaintiffs quote language in the Brookhaven Town Code § SR-17(F) that authorizes the Planning Board to recommend release of performance bonds only upon "satisfactory completion" of the work. Opp'n 39. Plaintiffs fail to explain, however, how this policy authorizes the addition of work to a performance

bond not originally contracted for, much less how it authorizes any sort of unconstitutional selective enforcement. Further, plaintiffs' contention that the Town subjected them, but not other developers, to these requirements refutes the notion that a widespread custom exists. Am. Compl. ¶ 205. Finally, plaintiffs fail to adequately allege that a policymaker with relevant final decision-making authority imposed these requirements. *Id.* ¶¶ 202–17. In fact, plaintiffs do not name an individual or entity responsible for this selective enforcement, much less explain how that individual or entity has final decision-making power. *Id.* For these reasons, I dismiss the equal protection claims arising from plaintiffs' allegations that they were the only developers: (1) required to do work not in the original performance bond and (2) required to do repair work.

## VIII.    First Amendment Retaliation Claim[19]

Plaintiffs also claim that the Town refuses to release Scheyer Court and Grand Medford from their performance bonds in retaliation for Article 78 actions that both developers brought years earlier related to their subdivision developments. Am. Compl. ¶¶ 256, 258a–e. Grand Medford additionally contends that the Town delayed issuance of its certificates of occupancy in retaliation for its prior actions against the Town and because it refused to sell Lot 26 to the Town, forcing the Town to commence eminent domain proceedings. *Id.* For reasons I have already explained, I dismiss all First Amendment claims related to the performance bond as unripe. *See supra* Discussion Section IV.A. I dismiss the remaining First Amendment retaliation claim related to the Town's delayed issuance of the certificates of occupancy because Grand Medford failed to state a claim under *Monell*. *See supra* Discussion Section VI.

---

[19] Plaintiffs have not indicated a cause of action pursuant to which they bring their First Amendment retaliation claim. Am. Compl. ¶¶ 255–76. However, I read the Amended Complaint as alleging a First Amendment claim under § 1983 because plaintiffs allege that they are "entitled to recover their costs, including attorneys' fees and expert fees, pursuant to 42 U.S.C. § 1983 against all Defendants" for this alleged violation. *Id.* ¶ 276.

IX.     **Grand Medford's Due Process Challenge to the Brookhaven Wetlands & Waterways Ordinance**

Grand Medford requests that I declare unconstitutional Chapter 81 of the Brookhaven Town Code, "entitled the Town of Brookhaven Wetlands & Waterways Ordinance," to the extent that it "allows the Town to designate real property as wetlands without notice and/or an opportunity to be heard." Am. Compl. ¶ 200. Defendant argues, however, that despite Grand Medford's assertion that the Town designated Lot 26 as a wetland without notice or an opportunity to be heard, *id*. ¶ 194, "the Town's actions with respect to Lot 26 have been undertaken pursuant to New York State Eminent Domain Procedure Law ("EDPL") . . . [which] provides all the procedural due process required." Defs.' Mot. 22; *see also* Am. Compl. ¶ 71 (acknowledging the ongoing state eminent domain proceeding related to Lot 26). Grand Medford has not alleged that the Town failed to follow the notice or hearing procedures set out in sections 204 and 207 of the EDPL, and in fact, acknowledges that these procedures have occurred. Am. Compl. ¶¶ 175–201; Opp'n 34. As a result, I do not read Grand Medford's assertions as alleging that it failed to receive *any* notice or *any* hearing related to the Lot 26 eminent domain proceedings. Instead, I read the Amended Complaint as contending that Grand Medford did not receive notice or a hearing alerting it that the Town considered Lot 26 a protected wetland separate from whatever notice or hearing it received pursuant to the EDPL sections 204 and 207. Defendant argues that Grand Medford's claim is not ripe and that it has failed to state a claim. Defs. Mot. at 7.

A.  **Ripeness**

I assume without deciding that the final decision ripeness requirement applies to this claim because, if the requirement does apply, the Town has clearly rendered a final decision sufficient to meet this requirement and warrant a review on the merits. On April 20, 2022, the New York State Supreme Court issued a vesting order, transferring the property, upon the Town's filing of

an "acquisition map," to the Town for open space purposes. *See* Defs. Mot., Ex. 9. Further, on

May 4, 2022, the Town entered a Notice of Acquisition alerting Grand Medford that it had acquired

the property. *See id.* Ex. 10; *see also*, Am. Compl. ¶ 71. These actions are final decisions sufficient

to fulfill the ripeness requirement. *See Strensrud v. Rochester Genesse Reg'l Transp. Auth.*, 507

F. Supp. 3d 444, 452 (W.D.N.Y. 2020) (determining that the plaintiff's takings claim was ripe

because the state rendered a final decision on the matter when it issued a vesting order); *Goldstein*

*v. Pataki*, No. 06-CV-5827 (NGG) (RML), 2007 WL 1695573, at *12 (E.D.N.Y. Feb. 23, 2007)

(determining that a plaintiff's takings claims were ripe at the "time of the government entity's

public purpose finding") *report and recommendation adopted in relevant part*, 488 F. Supp. 2d

254 (E.D.N.Y. 2007), *aff'd*, 516 F.3d 50 (2d Cir. 2008).

### B.  Merits

Although Grand Medford's claim is ripe, it fails to state a claim that the Brookhaven

Wetlands & Waterways Ordinance violates its due process rights by not guaranteeing it notice or

a hearing prior to designating Lot 26 as a protected wetland. Grand Medford argues that the process

it received pursuant to EDPL section 207 is insufficient for a variety of reasons, including: that (1)

the pending eminent domain proceeding "determines only the value of Lot 26 and not whether it

was improperly designated as 'wetlands'"; (2) "the hearing before the Town Board determines

only whether 'the proposed acquisition in condemnation is to further public use and is in public

interest'"; and (3) that the EDPL § 207 hearing requirements are inadequate because they are

"appellate in nature and would only review the condemnation order," not the Town's decision to

designate Lot 26 as a wetland. Opp'n 34.

These claims are unavailing. The Town initiated eminent domain proceedings and

condemned Lot 26 *because* it determined that the lot is a protected wetland. *See* Defs.' Mot. Ex.

7, at 80–84 (minutes from Town Board hearing discussing Lot 26 as protected wetland); *id.* Ex. 8, at Ex. E (resolution adopting the findings and determinations of the Mach 11, 2021 Town Board hearing); Am. Compl. ¶ 71. Under section 207 of the EDPL, for thirty days after the Town published its determination and findings related to Lot 26 Grand Medford was entitled to seek judicial review in New York State Court of those findings, which covered the parcel's status as a protected wetland. EDPL § 207(A)–(C). As the Second Circuit has determined, this EDPL provision permitting judicial review of a public use determination provides sufficient process under the Due Process Clause. *See Brody v. Vill. of Port Chester*, 434 F.3d 121, 132–33, 134–36 (2d Cir. 2005) ("[T]he post-determination review procedure set forth in EDPL § 207 is sufficient under the [Procedural Due Process] . . . test. Due Process does not require New York to furnish a procedure to challenge public use beyond that which it already provides."). That the pending eminent domain proceeding only covers the value of Lot 26, *see* Opp'n 34; Am. Compl. ¶ 73, has no bearing on whether the EDPL section 207 appellate procedure is sufficient under the Due Process Clause. Instead, Grand Medford initiated this proceeding pursuant to an entirely different provision, EDPL section 701. *See* EDPL § 701; *see also* Defs.' Mot. Ex. 11. Further, Grand Medford's argument that it has a due process right to have a hearing on whether Lot 26 is a wetland *prior to* the Town's determination that it is one is also unavailing. *Brody*, 434 F.3d at 133–34 (determining that a plaintiff challenging a Town's decision to condemn his property had "no constitutional right to participate in the Village's initial decision to exercise its power of eminent domain" because "such a rule would impose an impossible burden on the condemner and would represent an unwarranted judicial arrogation of the legislature's power to condemn").

Lastly, Grand Medford did not allege that it failed to receive notice pursuant to EDPL section 204. Instead, it contends that the Town was not required to provide it notice, and did not

provide it notice, under the Brookhaven Wetlands & Waterways Ordinance prior to its designation of Lot 26 as a wetland. Am. Compl. ¶¶ 194, 200. Even if Grand Medford did not receive notice pursuant to EDPL section 204 prior to the Town's wetland designation, which it has not alleged, the Supreme Court has determined that due process does not require that a condemnee receive notice prior to a legislature's decision to condemn a property. *See Georgia v. City of Chattanooga*, 264 U.S. 472, 483 (1924) ("The taking is a legislative and not a judicial function, and an opportunity to be heard in advance need not be given."); *see also Brody*, 434 F.3d at 128 (describing *City of Chattanooga* as standing for the "well-established proposition that, because public use is a legislative determination, no notice at all need be given before a legislature passes an ordinance authorizing the exercise of eminent domain"). Grand Medford's notice argument therefore fails.

As a result, I dismiss this procedural due process challenge to the Brookhaven Wetlands & Waterways Ordinance because, as Grand Medford acknowledges, the Town initiated EDPL proceedings related to Lot 26, and Grand Medford has failed to allege that Grand Medford violated the EDPL. Am. Compl. ¶ 78; Opp'n 34.

Grand Medford also contends that the Brookhaven Wetlands & Waterways Ordinance is overbroad, unconstitutionally vague, and violative of its substantive due process rights. Am. Compl. ¶¶ 195–99. It fails, however, to explain how the ordinance fails on these constitutional grounds. *Id.* Instead, in making these allegations Grand Medford offers nothing more than "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. I, therefore, dismiss these claims as insufficiently pleaded.

## X.    Remaining State Law Claim

Plaintiffs also allege that New York State Town Law sections 277(9)(d) and (e) preempt

Brookhaven Town Code sections SR-17(C) and (F). Am. Compl. ¶¶ 155–62. This is a claim of purely state law. Because I have dismissed all of plaintiffs' federal claims and because this case is still in its infancy, I decline to exercise supplemental jurisdiction over the remaining state law claim. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims."); *see also Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (explaining that "as a general proposition," the Second Circuit has held that "if all federal claims are dismissed before trial, the state claims should be dismissed as well" (internal quotations and alterations omitted)); *United Rentals, Inc. v. Wilper*, 626 F. Supp. 3d 546, 553 (D. Conn. 2022) (declining to exercise supplemental jurisdiction over plaintiff's state law claims because the court dismissed all of the federal claims and because the "case is still in its infancy and has not yet gone to trial").

## XI.    Amendment to Pleadings

Federal Rule of Procedure 15 requires that I "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In fact, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). If plaintiffs request leave to amend a complaint but fail to submit a proposed amended complaint or explain the basis for their potential amendments, however, it is within my discretion to deny leave to amend. *See Corsini v. Nast,* 613 F. App'x 1, 4 (2d Cir. 2015) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss."); *Klein v. Forster & Garbus, LLP,* No. 19-CV-6164 (DLI) (RML), 2021 WL 2646334, at *5 (E.D.N.Y. June 28,

2021) ("Additionally, Plaintiff's failure to submit a proposed amended complaint provides justifiable grounds upon which the Court may deny his request."); *Murray v. New York*, 604 F. Supp. 2d 581, 588–89 (W.D.N.Y. 2009) (denying plaintiff leave to amend his complaint because plaintiff "has not sufficiently shown exactly what he seeks to add to his complaint"). The Second Circuit has explained that failure to include a proposed amended complaint or otherwise state the basis for an amendment indicates a lack of diligence and good faith. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990).

In a short paragraph at the end of their Opposition, plaintiffs request leave to replead, should I dismiss their Amended Complaint. *See* Opp'n 45. They fail, however, to attach a proposed amended complaint or otherwise indicate what their potential amendments would be. *See id.* They also do not explain the bases for any potential amendments. *See id.* As a result, except for the claims I dismiss on ripeness grounds alone, I deny plaintiffs' request for leave to amend their complaint. Should plaintiffs' claims I dismiss on ripeness grounds alone—Grand Medford's takings claims and the portions of plaintiffs' equal protection and First Amendment claims related to the Town's refusal to release their performance bonds—become ripe, they may amend their pleadings.

The claims that plaintiffs do not have leave to amend for failure to state or explain their potential amendments include: (1) the as-applied due process challenge to Brookhaven Town Code sections SR-17(C) and (F); (2) the § 1983 procedural due process claim; (3) the § 1983 substantive due process claim; (4) the procedural due process challenge against the Town of Brookhaven Wetlands & Waterways Ordinance; (5) the portion of the § 1983 equal protection claim dismissed on *Monell* grounds; (6) the portion of the § 1983 First Amendment claim dismissed on *Monell* grounds; and (7) plaintiffs' remaining state law preemption claim.

**CONCLUSION**

For the foregoing reasons, it is hereby ordered that:

All claims against the Planning Board and Town Board are dismissed with prejudice;

Plaintiffs' as-applied due process challenge to Brookhaven Town Code sections SR-17(C) and (F) (Count I) is dismissed with prejudice;

Plaintiffs' state law preemption claim against the Town (Count II) is dismissed with prejudice, but plaintiffs may bring this claim in New York State court;

Plaintiffs' § 1983 procedural due process claim (Count III) is dismissed with prejudice;

Plaintiffs due process challenge to the Town of Brookhaven Wetlands & Waterways Ordinance (Count IV) is dismissed with prejudice;

Plaintiffs' § 1983 equal protection claims (Counts V and VI) related to the Town's refusal to release the performance bond are dismissed without prejudice and plaintiffs have leave to amend their complaint should these claims become ripe;

Plaintiffs' § 1983 equal protection claims (Counts V and VI) that were dismissed on *Monell* grounds are dismissed with prejudice;

Plaintiffs' § 1983 takings claims (Count VII) are dismissed without prejudice and plaintiffs have leave to amend their complaint should these claims become ripe;

Plaintiffs' § 1983 substantive due process claims (Count VIII) are dismissed with prejudice;

Plaintiffs' First Amendment retaliation claim (Count IX) related to the Town's refusal to release the performance bond is dismissed without prejudice and plaintiffs have leave to amend their complaint should this claim become ripe;

Plaintiff's First Amendment retaliation claim (Count IX) related to the Town's delayed issuance of the certificates of occupancy is dismissed with prejudice.

SO ORDERED.



_____/s/_____
Allyne R. Ross
United States District Judge


Dated:      January 17, 2024
            Brooklyn, New York